IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANTHONY RODRIGUEZ,

      Plaintiff,

v.                                            15cv985 WPL

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

Anthony Rodriguez applied for disability insurance benefits on July 5, 2012, alleging disability beginning on April 2, 2009, from chronic pain in his back, right knee, and neck, and a right hand impairment. (Administrative Record "AR" 183, 213.) After his application was denied at all administrative levels, he brought this proceeding for judicial review. The case is before me now on his Motion to Remand or Reverse and supporting brief, a response filed by the Commissioner of the Social Security Administration ("SSA"), and Rodriguez's reply. (Docs. 16, 17, 23, 26.) For the reasons explained below, I grant Rodriguez's motion and remand this case to the SSA for further proceedings consistent with this opinion.

**STANDARD OF REVIEW**

In reviewing the Administrative Law Judge's ("ALJ") decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is a mere scintilla of evidence supporting it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214. I may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show us that []he has done so . . . ." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

### SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. § 404.1520(a)(4) (2016). If a finding of disability or nondisability is directed at any point, the ALJ will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. § 404.1520(a)(4),  & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 404.1520(e). The ALJ then determines the physical and mental demands of the claimant's past relevant work in phase two of the fourth step and, in the third phase, compares the claimant's RFC with the functional requirements of his past relevant work to see if the claimant is still capable of performing his past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 404.1520(f). If a

claimant is not prevented from performing his past work, then he is not disabled. 20 C.F.R.

§ 404.1520(f). The claimant bears the burden of proof on the question of disability for the first

four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v.*

*Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987).

If the claimant cannot return to his past work, then the Commissioner bears the burden, at the

fifth step, of showing that the claimant is capable of performing other jobs existing in significant

numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*,

844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in

detail).

### FACTUAL BACKGROUND

Rodriguez is forty-three years old. (AR 32.) He earned his GED in 2001 and previously

worked as a parks specialist for Los Alamos County and a security guard at Penasco High

School. (AR 214, 224.)

I do not address everything in the record but rather target my factual discussion to those

facts necessary to the disposition of this case.

Rodriguez's treatment records begin on April 4, 2008, when he received treatment for

allergies at the Holy Cross Penasco Clinic and Holy Cross Hospital. (*See generally* AR 340-584.)

The records note, among other things, back pain (*see, e.g.*, AR 344), shoulder pain (*see, e.g.*, AR

369), neck pain (*see, e.g.*, AR 378), knee pain (*see, e.g.*, AR 395), foot pain (*see, e.g.*, AR 446),

and ankle pain (*see, e.g.*, AR 467). The treatment records continue until September 12, 2011.

(AR 583-84.)

Rodriguez saw John Reid, M.D., at the Taos Orthopaedic Institute, on April 21, 2009, for

treatment after "a recent slip at work, aggravating the right knee and his low back." (AR 315.)

Dr. Reid noted that Rodriguez had three prior knee surgeries and was "undergoing epidural injections" for lower back pain. (*Id.*) Rodriguez saw Dr. Reid a total of six times in 2009, with visits spanning from April to November. (*See* AR 315-332.) At the visit on May 18, 2009, Dr. Reid reviewed an MRI and assessed right knee patella tendinosis and back pain. (AR 320.) Dr. Reid also noted, at the May 18 visit and the remaining four visits, that Rodriguez could return to work, with various activity restrictions. (*See* AR 319, 322, 324, 328, 332.)

Rodriguez saw Belyn Schwartz, M.D., with the Rehabilitation Medicine Associates of Northern New Mexico, four times: May 26, 2009, June 25, 2009, September 8, 2009, and June 10, 2010. (AR 313, 627.) After the visit on June 25, 2009, Dr. Schwartz noted that she "encouraged [Rodriguez] to apply for Social Security disability, as I do not anticipate this patient being able to return to work." (AR 628.)

Rodriguez first saw Robin Hermes, M.D., on October 12, 2011. (AR 589.) She diagnosed Rodriguez with "[c]hronic low back and bilateral leg pain," "[p]ossible lumbar radiculitis," and "[c]hronic hand pain." (AR 590.) Dr. Hermes administered lumbar facet injections on November 28, 2011. (AR 591.) At a follow-up visit on March 19, 2012, Rodriguez told Dr. Hermes that he experienced "a 60% reduction of pain" following the injections. (AR 586.)

Rodriguez went to the Taos Medical Clinic many times between 2012 and 2013 for treatment for back pain. (*See* AR 593-624.) The treatment notes do not discuss the impact of Rodriguez's pain on his ability to work.

Karen Schnute, M.D., a New Mexico Department of Disability Services non-examining physician, reviewed the evidence of record on December 10, 2012. (*See* AR 75-83.) Dr. Schnute concluded that Rodriguez could occasionally lift twenty pounds, frequently lift ten pounds, stand

or walk for a total of four hours per day, and could sit for about six hours in a normal eight hour workday. (AR 82-83.)

Rodriguez saw Theresa Genovese-Elliot, M.D., for a work capacity assessment in connection with a worker's compensation claim on February 1, 2013. (AR 632-639.) Dr. Genovese-Elliot's report includes discussion of Rodriguez's prior visits with other physicians, including Philip Shields, M.D., a neurosurgeon, who concluded, among other things, that Rodriguez was "incapacitated by pain after a motor vehicle accident in 2007." (AR 636.) Dr. Genovese-Elliot concluded her report by noting that "Mr. Rodriguez is capable of working in a sedentary capacity, no lifting greater than 5 pounds." (AR 639.)

Ronald Davis, M.D., a New Mexico Department of Disability Services non-examining physician, reviewed the evidence of record on May 7, 2013, and found an RFC identical to Dr. Schnute's RFC. (*Compare* AR 97-99 *with* AR 82-83.)

Rodriguez's treating physician, Christiane Sanburn, M.D., completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) on November 26, 2013. (AR 629-631.) Some of the findings include that Rodriguez can stand continuously for one hour without interruption and can walk for one hour without interruption. (*See* AR 629.) Dr. Sanburn wrote a follow-up letter on May 2, 2014, where she further restricted her November 26, 2013, findings and concluded by stating that Rodriguez's "physical restrictions, that are permanent, convey a permanent disability. He would be unable to work at any job." (AR 664.)

### Hearing Testimony

Rodriguez testified at the hearing on May 6, 2014. (AR 24, 31-54.) Among other things, he stated that he had pain in his neck, lower back, upper back, and knee, and weakness in his right arm. (*See* AR 44.) He stated that he heats his home with wood but can only lift pieces of

wood that weight five to ten pounds. (AR 46.) He also stated he can stand in one place for twenty

to thirty minutes and has to lie down constantly throughout the day to relieve pain. (AR 48.)

### ALJ and Appeals Council's Decision

The ALJ issued his decision on August 18, 2014. (AR 23.) At step one, he determined

that Rodriguez had not engaged in substantial gainful activity since April 2, 2009. (AR 16.) At

step two, the ALJ found that Rodriguez had the severe impairments of "back pain, right knee

pain, neck pain and overweight." (*Id.*) At step three, the ALJ concluded that Rodriguez did not

have an impairment or combination of impairments that met or medically equaled anything in the

Listing of Impairments. (*Id.*)

At phase one of step four, the ALJ determined that Rodriguez had the RFC "to perform

light work" with the following limitations:

> no lifting/carrying more than 20 pounds occasionally and 10 pounds frequently;
> pushing/pulling limitations consistent with lifting/carrying; stand/walk for four
> hours out of an eight-hour workday; sit for six to eight hours out of an eight-hour
> workday; is unable to climb ladders, ropes and scaffolding; can frequently climb
> stairs, kneel, crouch and crawl; and should avoid hazardous or fast machinery.

(AR 17.) In making this determination, the ALJ found Rodriguez "not entirely credible" (AR

18); gave "considerable weight" to the opinions of Drs. Reid, Hermes, and Genovese-Elliot, and

the providers from the Holy Cross Penasco Clinic and Holy Cross Hospital (AR 21); gave "great

weight" to the opinions of Drs. Davis and Schnute (*id.*); and gave "some weight" to the opinions

of Drs. Schwartz and Sanburn, and the providers from the Taos Medical Group (*id.*).

At phases two and three of step four, the ALJ determined that Rodriguez "has past

relevant work as a security guard and a park specialist (grounds keeper)," but concluded, based

on testimony from a vocational expert, that Rodriguez is "unable to perform past relevant work."

(AR 22.)

Proceeding to step five, the ALJ heard testimony from the vocational expert and found that Rodriguez could perform other jobs existing in significant numbers in the national economy and was not disabled. (AR 22-23.) The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (AR 1.)

## DISCUSSION

Rodriguez cites three reasons to support reversing and remanding his case: (1) the ALJ's credibility analysis contains legal error, because it is unspecific, and is not supported by substantial evidence (*see* Doc. 17 at 7-10); (2) the ALJ improperly weighed the medical opinions (*see id.* at 10-21); and (3) the ALJ improperly interpreted the burden of proof at step five (*see id.* at 21-25). Because I agree with (1) and find that the ALJ committed legal error evaluating Rodriguez's credibility, I decline to rule on Rodriguez's remaining two arguments, as re-assessing Rodriguez's credibility may adjust the ALJ's analysis on remand.

Rodriguez argues that the ALJ's credibility discussion consisted of non-specific, boilerplate conclusions, and that the ALJ failed to note "that the record on the whole has substantial elements in favor of his credibility and integrity." (Doc. 17 at 8.) The Commissioner responds that the ALJ adequately explained his credibility findings and is not required to reiterate the evidence he discussed earlier in his decision. (*See* Doc. 23 at 8-9). The Commissioner adds that the significance of a "less-than-ideal" credibility explanation is lessened because the RFC, when read as a whole, is supported by substantial evidence. (*Id.* at 10.)

Rodriguez's credibility is particularly important because the vocational expert testified that Rodriguez would be unable to do past relevant work or any other job if his subjective complaints were assumed to be true. (*See* AR 64.)

When assessing a claimant's credibility, the ALJ must "consider the entire case record," Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at \*1 (July 2, 1996), cite "specific reasons for the finding . . . supported by the evidence in the case record," *id.* at \*2, and adequately link the substantial evidence to the credibility determination, *see Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (ordering "limited remand" because "the link between the evidence and credibility determination [was] missing"); *see also Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) (reversing and remanding because the ALJ's credibility determination, which consisted of "boilerplate language" that contained no reference to "the specific evidence that led the ALJ to reject claimant's testimony," "did not comply with the legal standards of SSR 96–7p or *Kepler*.").

I note that courts defer to SSRs "unless they are plainly erroneous or inconsistent with the Social Security Act." *Andrade v. Sec'y of Health & Hum. Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (quotation and alterations omitted). Though SSR 96-7p was superseded by SSR 16-3p on March 28, 2016, *see* 2016 WL 1237954 (Mar. 24, 2016), both parties state, and I agree, that SSR 96-7p applies to the review of this case because it was in effect at the time of the ALJ's decision. (*See* Doc. 23 at 8 n.3; *see also* Doc. 26 at 7.)

The structure of the ALJ's decision addressing Rodriguez's credibility is as follows: first, the ALJ summarized Rodriguez's hearing testimony (AR 17-18); second, the ALJ stated his conclusion that Rodriguez's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible for the reasons explained in this decision" (AR 18); third, the ALJ summarized the medical findings (AR 18-21); and fourth, the ALJ provided the following conclusion:

> The alleged effect of the claimant's symptoms on activities of daily living and basic task performance is not consistent with the total medical and non-medical

evidence in the file. The claimant's statements about his impairments and their impact on his ability to perform activities of daily living and basic functions are not entirely credible in light of discrepancies between the claimant's alleged symptoms and objective documentation in file. The physical findings and supporting clinical data do not closely corroborate or correlate the claimant's subjective complaints.

The description of the symptoms and limitations, which the claimant has provided throughout the record, has generally been inconsistent and unpersuasive and the claimant has not provided convincing details regarding factors that precipitate the allegedly disabling symptoms (AR 21).

Neither the structure of this analysis nor the specific paragraphs addressing Rodriguez's credibility satisfy SSR 96-7p or *Kepler*. The structure requires that I compare the claimant's subjective complaints with the objective medical evidence that follows to make inferences about Rodriguez's credibility. The ALJ's approach does not demonstrate that the ALJ "'closely and affirmatively linked'" the credibility determination to the substantial evidence. *Hardman*, 362 F.3d at 679 (quoting *Kepler*, 68 F.3d at 391). As for the specific paragraphs addressing Rodriguez's credibility, they are boilerplate: they contain no specific reference to this case and "fail[] to inform [me] in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible." *Hardman*, 362 F.3d at 679.

In addition to legal error, the ALJ's boilerplate credibility conclusion is contradicted by evidence in the record, and the ALJ's failure to address this contradictory evidence calls into question whether his credibility determination is supported by substantial evidence.

For example, the ALJ's credibility conclusion states that Rodriguez's "description of [his] symptoms and limitations . . . has generally been inconsistent and unpersuasive." (AR 21.) I cannot agree. For instance, Rodriguez testified that he is limited to lifting "five or ten pounds" (AR 46), Dr. Genovese-Elliot opined that "claimant was capable of working in a sedentary

capacity, with no lifting greater than five pounds" (AR 20), and the ALJ gave Dr. Genovese-Elliot's opinion "considerable weight" (AR 21).

Even more notable is the opinion of treating physician Dr. Sanburn. The ALJ's credibility analysis mentions one piece of evidence submitted by Dr. Sanburn—"the RFC laid out in Exhibit 9F," which Dr. Sanburn completed on November 26, 2013, which suggests that Rodriguez's limitations are not as severe as he claims. (AR 21; *see* AR 629-631.) Yet the ALJ failed to discuss a follow-up letter Dr. Sanburn wrote six months later, on May 2, 2014, where Dr. Sanburn restricted her earlier RFC and noted that Rodriguez has a "permanent disability" and "would be unable to work at any job." (AR 664.) In other words, the ALJ attempted to discredit Rodriguez by suggesting that his treating physician entered an RFC that contradicted his subjective complaints, but the treating physician's most recent opinion, that the ALJ failed to mention, favors Rodriguez's credibility. If the ALJ relies on Dr. Sanburn, who is a treating physician, then the ALJ must give her opinion "particular weight," *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003), as well as "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects," *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996), including the May 2, 2014 letter.

CONCLUSION

The ALJ committed legal error by failing to properly evaluate Rodriguez's credibility. Given the insufficient analysis, it also appears that substantial evidence may not support the ALJ's credibility determination. On remand, the ALJ will conduct a credibility analysis in accordance with this Order, Tenth Circuit law, and the appropriate regulations.

IT IS SO ORDERED.

William P. Lynch
United States Magistrate Judge